IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANTHONY CHATMAN, FRANCISCO ALVARADO, ZACHARY GRANADOS, TYNDALE MOBLEY, and JOSEPH DEGUAIR, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>MAX N. OTANI, Director of State of Hawaiʻi, Department of Public Safety, in his official capacity,<br><br>        Defendant. | CIVIL NO. 21-00268 JAO-KJM<br><br>ORDER GRANTING (1) JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND (2) PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS SETTLEMENT AGREEMENT |

**ORDER GRANTING (1) JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND (2) PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS SETTLEMENT AGREEMENT**

Before the Court are (1) the parties' Joint Motion for Final Settlement Approval, ECF No. 117; and (2) Plaintiffs' Motion for Approval of Attorneys' Fees and Costs Settlement Agreement, ECF No. 116. For the reasons set forth below, the Court GRANTS the motions.

## BACKGROUND

In this class action, Plaintiffs Anthony Chatman ("Chatman"), Francisco Alvarado ("Alvarado"), Zachary Granados ("Granados"), Tyndale Mobley

("Mobley"), and Joseph Deguair ("Deguair") (collectively, "Plaintiffs"), individually and on behalf of the classes, challenge the conditions in Hawaiʻi's prisons and jails that have contributed to multiple COVID-19 outbreaks.  They contend that the Department of Public Safety ("DPS"), headed by Defendant Max Otani ("Defendant"), has mishandled the pandemic and failed to implement its Pandemic Response Plan ("Response Plan") in violation of their Eighth and Fourteenth Amendment rights.

On July 13, 2021, the Court issued an Order (1) Granting Plaintiffs' Motion for Provisional Class Certification and (2) Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order ("PI Order").  ECF No. 37; *see also Chatman v. Otani*, Civil No. 21-00268 JAO-KJM, 2021 WL 2941990 (D. Haw. July 13, 2021).  The Court provisionally certified the following classes pursuant to Federal Rule of Civil Procedure ("FRCP") 23:

> **Post-Conviction Class**: All present and future sentenced prisoners incarcerated in a Hawaiʻi prison.
>
> > Post-Conviction Medical Subclass:  Includes all present and future Post-Conviction Class members whose medical condition renders them especially vulnerable to COVID-19 as determined by guidelines promulgated by the CDC.
>
> **Pretrial Class**: All present and future pretrial detainees incarcerated in a Hawaiʻi jail.

> Pretrial Medical Subclass: Includes all present and future Pretrial Class members whose medical condition renders them especially vulnerable to COVID-19 as determined by guidelines promulgated by the CDC.

*Chatman*, 2021 WL 2941990, at *4, 12 (citations omitted). The Court also granted injunctive relief and ordered Defendant "to *fully comply* with the Response Plan, focusing in particular on" specific sections. *Id.* at *24 (footnote omitted).

On July 29, 2021, Defendant filed a Motion to Clarify and/or Modify Preliminary Injunction, *see* ECF No. 45, followed by a Second Motion to Modify Preliminary Injunction on August 8, 2021, *see* ECF No. 51. The Court denied both motions. ECF Nos. 61, 79.

After participating in multiple settlement conferences with Magistrate Judge Kenneth J. Mansfield, the parties settled the case. ECF Nos. 11, 82, 84, 90–92. On September 2, 2021, the parties executed a Settlement Agreement and General Release ("Settlement Agreement"). ECF No. 117-6. The Settlement Agreement includes the following key terms:

- Implementation of the Response Plan, with adaptations based on CDC guidelines, best practices and recommendations from the State of Hawaiʻi Department of Health, and each facility's physical space, staffing, population, operations, and other resources and conditions, *id.* ¶ 1;

- Establishment of a five-person, independent Agreement Monitoring Panel ("AMP") — consisting of individuals with knowledge and expertise in correctional health care and management of infectious diseases in a correctional setting or in the management of correctional systems — that will provide non-binding, informed guidance and recommendations to aid DPS with the implementation of the Response

3

Plan and any necessary changes to DPS's COVID-19 response, *id.* ¶¶ 2–3, 5;

- Implementation of quarantine and isolation, vaccination and testing, and sanitation procedures, *id.* ¶¶ 12–24;

- Issuance of a formal directive prohibiting DPS staff from retaliating against any inmate or staff member for participation in this lawsuit, *id.* ¶ 25;

- Release of all claims for declaratory and injunctive relief, and attorneys' fees and costs arising from the acts or omissions alleged in this lawsuit, or acts or omissions that could have been litigated in this lawsuit, *id.* ¶ 29;

- Understanding that the Settlement Agreement is a compromise to resolve the claims asserted in this action and of the disputed claims without adjudication of the parties' rights, claims, or defenses, and does not constitute an admission of liability or truth of the parties' allegations, claims or contentions, *id.* ¶¶ 30–31;

- Dismissal of all claims and pending appeals with prejudice, following the final approval of the settlement, *id.* ¶ 34;

- Payment of reasonable attorneys' fees and costs to class counsel, *id.* ¶ 54.

On September 3, 2021, the parties filed a (1) Joint Motion for Preliminary Approval of Settlement and for Order Setting Fairness hearing, ECF No. 93; and (2) Joint Motion for Order Approving Notice and Directing Giving Notice to the Class, ECF No. 94. The Court granted the motions on September 9, 2021, finding that the Settlement Agreement met the standard for preliminary approval under FRCP 23(e), and that the manner and form of the proposed notice was proper. ECF No. 97 at 2–6.

The parties engaged in settlement discussions regarding attorneys' fees throughout the month of September.  ECF Nos. 99, 103, 108, 111.  On October 1, 2021, the parties executed an Attorneys' Fees and Costs Settlement Agreement and Release ("Fee Settlement Agreement").  ECF No. 117-7.

On October 6, 2021, the Court issued an Order Granting the Parties' Joint Motion to Request Deadlines for (1) the Motion for Final Approval of the Settlement Agreement and General Release and (2) Motion for an Award of Attorneys' Fees and Costs.  ECF No. 114.  In addition to establishing motions and briefing deadlines, the Court required a revised notice to be posted in each correctional facility, informing the class members of the new final fairness hearing date, the deadline to object to the pending motions (with copies of the motions made available to the class members), and the deadline to file a request to appear at the final fairness hearing.  *Id.* at 2.  On the same day, class counsel filed the objections received from class members.  ECF No. 115.

On October 7, 2021, Plaintiffs filed a Motion for Approval of Attorneys' Fees and Costs Settlement Agreement.  ECF No. 116.  On October 8, 2021, the parties filed a Joint Motion for Final Settlement Approval.  ECF No. 117.

Five class members timely filed requests to appear at the hearing.  ECF Nos. 120, 122–25.

On November 8, 2021, the Court held a final fairness hearing, at which it heard the pending motions.  ECF No. 130.

## DISCUSSION

The parties ask the Court to grant final approval of the settlement.  ECF No. 117.  Plaintiffs request $250,540.00 in attorneys' fees.  ECF No. 116.  Defendant does not oppose the fee request.  ECF No. 119.  After carefully considering the motions, the Settlement Agreement and Fee Settlement Agreement (collectively, "the [proposed] settlement"), and the applicable law, the Court GRANTS the motions and approves the settlement.

**A.    Class Certification**

In the PI Order, the Court provisionally granted class certification, finding that FRCP 23(a)'s requirements were satisfied.  *See Chatman*, 2021 WL 2941990, at *7–10.  The Court also determined that Plaintiffs met FRCP 23(b)(2)'s requirements for an injunctive relief class.  *Id.* at *10.  The Court confirms that certification is proper pursuant to FRCP 23(a) and (b).

**B.    Notice**

The Court previously approved the parties' notice to the class members.  ECF No. 97 at 6.  Between September 10 and 14, 2021, copies of the notice were posted at DPS facilities in each housing unit, dormitory, or other areas where it could be seen by class members.  ECF No. 117-1 at 10.  It was also posted on

6

DPS's website on September 10, 2021.  *Id.*  A reminder notice was subsequently posted at DPS facilities.  *Id.* at 11.  DPS staff then posted a revised notice — with an updated hearing date, objection deadline, and request to appear at the hearing — and copies of the pending motions available for class members' review.  *Id.*

Pursuant to the Class Action Fairness Act ("CAFA"), Defendant also served the Attorney General of the United States with a notice of the proposed class settlement, which included the items set forth in 28 U.S.C. § 1715(b).[1]  *Id.*  Defendant did not provide notice to Hawaii's Attorney General because she was aware of this case and has actively participated in the litigation.  *Id.* at n.2.

**C.    Fairness, Reasonableness, and Adequacy of Settlement**

FRCP 23(e)(2) authorizes district courts to approve class settlements that are

fair, reasonable and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

---

[1]  CAFA does not appear to apply here because jurisdiction is not based on CAFA. *See* 28 U.S.C. § 1332(d)(2)(A) ("[D]istrict courts . . . have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020).

    **(C)** the relief provided for the class is adequate, taking into account:

        **(i)** the costs, risks, and delay of trial and appeal;

        **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

        **(iv)** any agreement required to be identified under Rule 23(e)(3); and

    **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Courts also evaluate the following factors to determine whether FRCP 23(e)(2) is satisfied:

"(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011)).

    Here, the Court finds that the proposed settlement, taken as a whole, is fundamentally fair, adequate, and reasonable.  The Court reaches this conclusion after comprehensively exploring and considering all of the applicable factors

identified above, as well as the parties' and objectors' positions at the final fairness hearing.

**1.     Adequacy of Class Counsel and Class Representatives; Settlement Negotiation; Treatment of Class Members Relative to One Another**

The Court finds that Plaintiffs and class counsel adequately represented the class; the settlement was negotiated at arm's length through settlement conferences with Magistrate Judge Mansfield; and class members are treated equitably relative to one another under the settlement. *See* Fed. R. Civ. P. 23(e)(2)(A), (B), (D).

**2.     Adequacy of Relief**

The Court similarly finds that the relief accorded to the class is adequate under FRCP 23(e)(2)(C) and the factors listed above, *see Kim*, 8 F.4th at 1178 (citation omitted).

**a.     Risks, Costs, Length of Further Litigation, Strength of Plaintiffs' Case, Stage of Proceedings**

Because victory in litigation is never guaranteed for either side, regardless of the strength of a plaintiff's case, resolution by settlement is favorable.  The parties accurately recognize the complexity of the case and that they face risks and challenges if the case were to proceed.  Not only would the parties incur substantial costs from further litigation, trial, and any appeal, but continued litigation would also delay relief to the class members for COVID-19 issues that need to be addressed now.  Therefore, the benefits of present resolution outweigh the risks of

further litigation.  And although the case is still in a relatively preliminary stage, the parties engaged in extensive discussions, exchanged significant amounts of information, and collaborated in an effort to implement a process that would make a meaningful impact during a critical time in the pandemic.

### b.    Settlement Amount

This case only involves injunctive and declaratory relief, so there is no monetary settlement amount.  However, at the hearing, defense counsel explained that $5 million in Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and American Rescue Plan Act ("ARPA") funds have been set aside to fund AMP[2] and to implement its recommendations regarding compliance with the Response Plan and other improvements to DPS's COVID-19 response.

### c.    Experience and Views of Counsel/Presence of Governmental Participant

Counsel for the parties are seasoned and class counsel have extensive experience with class actions.  As such, class counsel could reasonably and fairly evaluate the settlement, and they seek final approval.  The Court also notes that defense counsel included deputies from the State Attorney General's Office, as well as Hawaii's Attorney General herself.  At the hearing, counsel for both sides

---

[2]  For example, the Settlement Agreement authorizes up to $75,000.00 in fees per AMP member for the duration of the agreement unless the agreement is extended. ECF No. 117-6 ¶ 4.

provided additional compelling reasons to approve the settlement and persuasively explained why the outcome is favorable for all parties.

### d.    Class Members' Reactions

Seventy-three class members submitted written objections to the settlement,[3] including Granados.[4]  ECF No. 115.  This represents approximately 2.4% of the class members.  ECF No. 117-1 at 22.  The objections generally fall into one or more of the following categories:  (1) DPS is not implementing the Response Plan, to the class members' detriment; (2) class members do not want to release claims for injunctive/declaratory relief and/or damages; (3) the provisions governing AMP are insufficient because AMP recommendations are non-binding and inspection notices are too lengthy; (4) the settlement terms do not adequately protect the class members; (5) class members have suffered injuries from contracting COVID-19 in the facilities; (6) a federal monitor or special master should be appointed and binding enforcement should be available, subject to judicial review; and (7) DPS is not being held accountable through the settlement.  *See generally* ECF No. 115.

---

[3]  Thirty-six written objections were submitted, two of which were presented by multiple class members.  ECF No. 115-10 (primary objector plus five additional inmates); ECF No. 115-27 (primary objector plus 32 additional inmates).  Many of the objections were form objections submitted by multiple class members.

[4]  Class counsel spoke to Granados after he submitted the form objection, and represented that Granados is now satisfied with the settlement.

Five class members appeared at the hearing (three from Maui Community Correctional Center and two from Halawa Correctional Facility), four of whom objected to the settlement on one or more of the following bases:[5] (1) there exist deficiencies with respect to COVID-19 protocols at the facilities, *i.e.*, comingling of COVID-19 positive inmates with COVID-19 negative inmates; lack of testing; overcrowding and lack of social distancing, particularly during meals; lack of sanitizer; (2) it is unclear whether the class will be entitled to monetary or other relief; and (3) the attorneys get a windfall.  The participants maintained their positions even after hearing counsel's comments and responses to their objections.

The absence of a large number of objections to the proposed settlement raises a strong presumption that the terms of the proposed settlement are favorable to the class members and militates in favor of approving the settlement.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable." (citations omitted)).  Even a large number of objections by class members would not necessarily render the settlement unfair, "as long as it is

---

[5]  Notably, these class members did not timely submit written objections.  If they are included in the number of objectors, and Granados is removed, approximately 2.5% of the class has objected.

otherwise fair, adequate, and reasonable." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding objections from 16% of the class, including three of four named plaintiffs, insufficient by itself to overturn the settlement) (citations omitted). This is because allowing objectors to prevent approval of a settlement "would put too much power in the hands of a few persons having no right to a preferred position in settlement, to thwart a result that might be in the best interests of the class." *Id.* (citation omitted). Moreover, a settlement should not be rejected "merely because class plaintiffs oppose it." *Id.* (citations omitted).

Here, notwithstanding the class members' objections, the Court finds that the settlement is fair, adequate, and reasonable. It is clear that the small percentage of class members who objected are dissatisfied and want greater relief under the settlement, but their preferences do not alone undermine the fairness of the settlement, nor compel its rejection. Significantly, over 97% of the class members have not objected to the settlement, and that supports approval. *See Boyd*, 485 F. Supp. at 624 ("[A]ll class members are affected equally by the settlement, and the Court finds persuasive the fact that eighty-four percent of the class has filed no opposition."). While some of the objections may on their face appear concerning, they are either unfounded or are insufficient to undermine the fairness, reasonableness, and adequacy of the settlement. The Court addresses each category of objections in turn.

13

First, as for complaints that DPS is not implementing the Response Plan and has deficient COVID-19 protocols, counsel represents that AMP has inspected the facilities, worked with staff, and its recommendations are forthcoming, after which additional steps will be taken to address identified issues. As counsel pointed out at the hearing, this is not an easy or quick fix in the corrections system. However, AMP's involvement and DPS's cooperation will result in meaningful changes in the near future. Thus, while the Court has had concerns about the implementation of and/or compliance with the Response Plan, it is currently satisfied that the Settlement Agreement has established a process to discern, address, and rectify the allegedly recurring COVID-19 issues.

Second, many of the objectors express dissatisfaction with the release of claims. But it appears that these objections are based on a misunderstanding of the scope of the release. No claims for monetary relief are released[6] and neither are claims for injunctive/declaratory relief that arise after the conclusion of this lawsuit. The general release in the Settlement Agreement pertains to "all claims and liabilities of any kind which Plaintiffs or Defendant had, have, or may have for *declaratory or injunctive relief* or for attorneys' fees and costs *arising from acts or*

---

[6] In fact, class counsel represented at the hearing that he will be pursuing a COVID-19 damages lawsuit in state court in January 2022. As such, any damages claims related to emotional or physical injuries suffered as a result of contracting COVID-19, are not barred by this settlement, and cannot be a basis to reject it.

14

*omissions alleged in this lawsuit*."  ECF No. 117-6 ¶ 29 (emphases added).  The

class members therefore have recourse and are not precluded from seeking

additional relief, if appropriate, at a later date.

Third, while AMP recommendations are non-binding and there is a 72-hour

notification window prior to an inspection, this does not undermine the

effectiveness of AMP nor its function.  In the interests of the class and Defendant,

the parties have mutually agreed that this is the best mechanism under the

circumstances to timely address COVID-19 issues at DPS facilities.  Indeed, AMP

includes representatives from both sides who will engage with DPS staff to

identify and rectify any existing shortcomings.  At the hearing, class counsel

expressed his satisfaction with the AMP process so far.  The Court believes that

this collaborative model will facilitate change in a far more expeditious and

economical manner than continued litigation.  To the extent that objectors urge the

Court to appoint a federal monitor or special master, the Court finds that the lack

of the foregoing does not render the settlement unreasonable, unfair, or inadequate,

and that the dispute resolution section in the Settlement Agreement provides a

mechanism to involve the Court should any disputes arise.  *Id.* ¶¶ 38–45.

Fourth, the Court disagrees that DPS is not being held accountable through

the settlement.  Immediate and significant change has yet to be effectuated so the

objectors' position is understandable.  But DPS is not escaping any responsibility.

15

It is involved with AMP's process and has set aside $5 million in CARES Act and ARPA funds to finance AMP and to implement AMP's recommendations. Moreover, as the Court just explained, Plaintiffs have the ability to seek relief from the Court if DPS is noncompliant and informal dispute resolution efforts are unsuccessful.

Finally, Plaintiffs and the class members are adequately protected by the terms of the Settlement Agreement.  Objections regarding monetary relief are without merit because Plaintiffs only sought injunctive/declaratory relief in this lawsuit and monetary damages are therefore unavailable.  Monetary relief may be sought in a separate lawsuit, as may injunctive/declaratory relief for acts or omissions *not* alleged in this lawsuit.

### e.    Attorneys' Fees

The proposed attorneys' fees are reasonable, including the timing of payment.[7]  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  Courts have "an independent obligation to ensure that [any attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (alteration in original) (internal quotation marks and citations omitted).  "Regardless of 'whether the attorneys'

---

[7]  The fees will be paid within a reasonable time after the funds are appropriated by the Legislature of the State of Hawai'i.  ECF No. 117-7 at 3.

fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.'" *Id.* at 1023 (footnote and citation omitted). FRCP 23(e) requires courts to "balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Id.* at 1024.

Heightened scrutiny must be applied to "post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate.'" *Id.* at 1025 (quoting Fed. R. Civ. P. 23(e)(2)(C)). This requires courts to look particularly at three signs, which may indicate collusion: "(1) a handsome fee award despite little to no monetary distribution for the class, (2) a 'clear sailing' provision under which defendant agrees not to object to the attorneys' fees sought, and (3) an agreement that fees not awarded will revert to the defendant, not the class fund." *Kim*, 8 F.4th at 1180 (citation omitted); *see also Briseño*, 998 F.3d at 1023 (identifying these factors as a sign that class counsel have infected negotiations by pursuing their own self-interest).  The presence of these red flags "is not a death knell — but when they exist, 'they require[] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the

agreement were not unreasonably high.'" *Kim*, 8 F.4th at 1180 (alterations in original) (citation omitted).

### i.     No Collusion

The Court has reviewed the settlement for signs of collusion and finds none. Although the parties have reached a separate agreement regarding the award of fees and Defendant has not opposed Plaintiffs' motion, there is no "clear sailing" provision.  ECF Nos. 117-6, 117-7, 119.  Additionally, there is no fund from which fees will be paid; they must be appropriated by the Legislature, so there is no reversion to Defendant.

The fact that class counsel would receive a sizeable fee award when the class receives no monetary relief "is not per se problematic."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1051 (9th Cir. 2019).  Indeed, this is an injunctive/ declaratory relief case, not a damages case.  So the class members were never in a position to receive a monetary award.  The relief accorded through the settlement, albeit non-monetary, has substantial value and serves the interests of the class members.  Defendant will expend up to $5 million to maintain AMP and satisfy the terms of the Settlement Agreement.  Therefore, after closely reviewing the requested fees, the Court finds the request reasonable for the reasons that follow.

### ii.    Reasonableness of Fee Award

Plaintiffs request $250,540.00 in attorneys' fees.  "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  However, district courts have "an independent obligation to ensure that [any attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Briseño*, 998 F.3d at 1022 (alteration in original) (internal quotation marks and citations omitted).  A court "must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper" regardless of the source from which the funds are paid.  *Id.* at 1023 (internal quotation marks, citation, and footnote omitted).

The Ninth Circuit authorizes "two methods of calculating attorneys' fee awards in class actions:  (1) the 'lodestar' method and (2) the 'percentage-of-recovery' method."  *Kim*, 8 F.4th at 1180 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc)).  The lodestar method multiplies the number of hours reasonably expended in the litigation by a reasonable hourly rate to compute a reasonable fee award.  *See id.* (citation omitted).  This award may be adjusted "by an appropriate positive or negative multiplier reflecting . . . the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of

nonpayment." *Id.* at 1180–81 (alteration in original) (internal quotation marks and citation omitted).  The lodestar method is particularly appropriate in class actions primarily involving injunctive relief.  *See id.* at 1181 (citation omitted).

Alternatively, "[t]he percentage-of-recovery approach may be used 'where the defendants provide monetary compensation to the plaintiffs' and class benefit is easy to quantify." *Id.* (citation omitted).  District courts award class counsel a reasonable fee based on a percentage of the settlement fund under this method.  *See id.* (citation omitted).

Plaintiffs' fee request is based on a lodestar calculation reflecting class counsel's standard hourly rates multiplied by reduced corresponding hours expended in this litigation.  ECF No. 116-1.  According to class counsel, $500,000.00 more accurately reflects the amount of fees incurred since 2020, but he is willing to accept a significant reduction in fees to facilitate settlement.  *Id.* ¶¶ 31, 35.

The Court starts by determining "reasonable hourly rate[s] to use for attorneys and paralegals in computing the lodestar amount," which are established by the "prevailing market rates in the relevant community," *i.e.*, the market rates of attorneys and paralegals of comparable "experience, skill, and reputation" in "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (some internal quotation marks and citations

omitted).  The Court must also ascertain the reasonable number of hours — the hours that could have reasonably been billed to a client — "for which the prevailing party should be compensated."  *Id.* at 1202 (citation omitted).

Plaintiffs request the following hourly rates:  (1) Eric Seitz — $475; (2) Gina Szeto-Wong — $300; and (3) Kevin Yolken — $250.  ECF No. 116-1 ¶¶ 6, 11, 15.  "[T]he established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'"  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted).  This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill, and reputation.  Based on the Court's knowledge of this community's prevailing rates for attorneys of comparable skill, experience, and reputation, the Court's familiarity with this case, and counsel's submissions, this Court finds the requested hourly rates to be manifestly reasonable.

Plaintiffs also provided timesheets estimating the time counsel expended as of September 1, 2021, though it does not reflect all time entries for work completed in this case.  ECF No. 116-1 ¶ 30; ECF No. 116-2.  According to these timesheets, Mr. Seitz expended 67.8 hours, Ms. Szeto-Wong expended 662.6 hours, and Mr. Yolken expended 220 hours.  ECF No. 116-1 ¶ 30; ECF No. 116-2.  This results in a lodestar of $285,985.00.  Having reviewed the timesheets, the

21

Court finds that the time expended by counsel was reasonable.  Considering that the timesheets do not include the significant work completed since September 1, 2021 and/or other time spent on this litigation, the settled fee amount is reasonable.

District courts are encouraged "to cross-check their attorneys' fee awards using a second method of fee calculation." *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019) (citation omitted).  Based on the parties' estimation that the value of the injunctive relief is up to $5 million, the requested fee award is approximately 5% of the settlement value.

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees," *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (internal quotation marks and citation omitted), and 20% to 30% is the usual range. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  This percentage may be increased or decreased, as appropriate.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  If an adjustment is warranted, the court must provide a reasonable explanation of both "why the benchmark is unreasonable under the circumstances" and "how it arrives at the figure ultimately awarded." *Id.* at 272–73 (citation omitted).  District courts may consider this non-exhaustive list of factors in determining the percentage ultimately awarded:

> (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3)

> whether counsel's performance generated benefits beyond the
> cash settlement fund; (4) the market rate for the particular field
> of law; (5) the burdens class counsel experienced while litigating
> the case; (6) and whether the case was handled on a contingency
> basis.

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020)

(citations omitted).

The Court finds that the aforementioned factors weigh in favor of granting the requested fee award. Five percent is well below the benchmark. Twenty-five percent of $5 million is $1.25 million. And even if Defendant spends well below the $5 million fund, the requested fee award will still be within the benchmark if Defendant expends $1,002,160.00. Considering that the Settlement Agreement authorizes up to a collective total of $375,000.00 in fees for AMP members, it is reasonable to expect that at least $1 million will be expended from the $5 million fund to effectuate the Settlement Agreement.

Moreover, class counsel obtained a favorable result that benefits the class members and the corrections system as a whole; if the case were to proceed on its merits, there is a risk that Plaintiffs and the class would obtain no relief; class counsel assumed representation of Plaintiffs on a contingency-fee basis and advanced the costs of litigation, despite the risk that they would receive no compensation; and class counsel expended a considerable amount of time on this litigation, foregoing other work for a period of time. At the hearing, class counsel

represented that the fees merely cover overhead; no profits will result from this award and that was never the goal in any event.  Class counsel explained that he took out loans to fund this litigation and the fee award will enable him to pay back the loans.  Notably, the Court has received no formal written objections to the requested fees.[8]

### f.    Costs

Plaintiffs have waived recovery of costs associated with this litigation.  ECF No. 116-1 ¶ 36.

In sum there is no evidence or any suggestion that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties. Accordingly, the Court approves the settlement because it is fair, adequate, and reasonable for the reasons stated herein.

## CONCLUSION

In accordance with the foregoing, the Court GRANTS (1) the parties' Joint Motion for Final Settlement Approval, ECF No. 117; and (2) Plaintiffs' Motion for Approval of Attorneys' Fees and Costs Settlement Agreement, ECF No. 116, and ORDERS as follows:

---

[8]  One of the class members who appeared at the hearing characterized the fee award as a windfall for counsel.  Based on the reasons already articulated, this characterization is unfounded.

(1)   The requirements of FRCP 23(e) have been satisfied and the Settlement Agreement and Fee Settlement Agreement are fair, reasonable, and adequate.

(2)   The Court approves $250,540.00 in attorneys' fees.

(3)   This case is DISMISSED WITH PREJUDICE.

(4)   The Court retains jurisdiction regarding all matters relating to the administration, consummation, and enforcement of the Settlement Agreement and Fee Settlement Agreement and for any other necessary purpose relating to the settlement.

(5)   The Court directs the Clerk's Office to enter final judgment and close the case.

IT IS SO ORDERED.

DATED:     Honolulu, Hawai'i, November 10, 2021.



Jill A. Otake
United States District Judge

Civil No. 21-00268 JAO-KJM, *Chatman, et al. v. Otani*; ORDER GRANTING (1) JOINT MOTION FOR FINAL SETTLEMENT APPROVAL AND (2) PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS SETTLEMENT AGREEMENT